IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **FREDDIE LARRY COOPER** | : | |
| **Petitioner,** | : | |
| **vs.** | : | **CIVIL ACTION 04-0629-BH-L** |
| **RALPH HOOKS, Warden; and** | : | |
| **THE ATTORNEY GENERAL FOR** | | |
| **THE STATE OF ALABAMA,** | : | |
| **Respondents.** | : | |

## REPORT AND RECOMMENDATION

Freddy Larry Cooper, a state prisoner currently in the custody of respondent, has petitioned this Court for federal habeas corpus relief pursuant to 28 U.S.C. § 2254.  (Doc.1 )  Petitioner challenges the validity of his 1996 conviction and sentence in the Circuit Court of Baldwin County, Alabama for the offenses of rape in the first degree and sexual abuse in the first degree.  (Id.)

This action has been referred to the undersigned Magistrate Judge for entry of a report and recommendation as to the appropriate disposition of the issues in the petition.  See 28 U.S.C. § 636(b)(1)(B), 28 U.S.C. § 2254, Rule 8(b)(1) and Local Rule 72.2(c)(4).  This matter presently is before the Court on petitioner's petition and respondent's answer.

The undersigned has carefully reviewed the record and exhibits, and finds that there are sufficient facts and information upon which the issues under consideration properly may be resolved.

-1-

Therefore, no evidentiary hearing is required upon the issues.  <u>Keeney v. Tamayo-Reyes</u>, 504 U.S. 1, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992); Local Rule 72.1(c).

## I.      FINDINGS OF FACT

1.      On or about May 20, 1994 petitioner was indicted by a grand jury in Baldwin County, Alabama for the offense of first degree rape, pursuant to Ala. Code § 13A-6-61(a)(3), and first degree sexual abuse pursuant to Ala. Code §13A-6-66(a)(3).  (Doc. 11 Exhibit A, pp. 9-10, 23, 96).  The cases were consolidated for trial. (Doc. 11, Exhibit A, p. 13 )

2.      On January 5, 1996 the trial judge conducted a hearing to determine the admissibility of DNA evidence.  (Doc. 11, Exhibit A-3, R.1-31) The petitioner failed to appear at the hearing. However, counsel for petitioner was present at the hearing and waived his client's appearance.  The hearing proceeded as scheduled and the trial court concluded that the DNA evidence was admissible. (<u>Id.</u>)

3.      On January 11, 1996 a jury found petitioner guilty of first degree rape and first degree sexual abuse.  (Doc. 11, Exhibit A, pp. 4, 57, 142)

4.      On February 23, 1996  petitioner was sentenced to a term of life imprisonment on the first degree rape conviction and a term of ten (10) years imprisonment on the first degree sexual abuse conviction.  (Doc. 11, Exhibit A, pp. 6-8; 93-95 ) The court directed that the ten year sentence run consecutively with the life term.  (<u>Id.</u>)

5.      On June 7, 1996, petitioner appealed his convictions and sentences to the Alabama Court of Criminal Appeals on the grounds, in sum, as follows:  (1) petitioner was subjected to multiple punishments for convictions arising from a single act or transaction; (2) the trial court erred in admitting

testimony concerning the results of DNA testing ; (3) the trial court erred in admitting in evidence DNA population frequency statistical evidence; (4) ineffective assistance of counsel for failing to object to problems in the chain of custody; (5) ineffective assistance of counsel for failing to move to suppress confession; (6) ineffective assistance of counsel for failing to have the appellant's DNA biological expert testify at the pre-trial admissibility hearing and at trial; (7) appellant was denied his state and federal constitutional rights to be present at all stages of his trial, and (8) the state violated discovery order by refusing to turn over two probes used in the first DNA testing conducted by the Department of Forensic Sciences.  (Doc. 11, Exhibit A, pp. 76-77;  Doc. 9; Doc. 10, Exhibit D)

6.  On May 28, 1999 the Alabama Court of Criminal Appeals affirmed the convictions and sentences in an unpublished memorandum opinion.  (Doc. 10, Exhibit D); Cooper v. State, 768 So. 2d 1020 (Table) (Ala. Crim. App. 1999)

7.  Petitioner filed an application for rehearing on June 10, 1999 (Doc. 10, Exhibit E) which was overruled on August 6, 1999.  (Doc. 10, Exhibit E, pp. 26); Cooper v. State, 778 So. 2d 869 (Table) (Ala. Crim. App. 1999).

8.  On August 12, 1999 petitioner filed a petition for a writ of certiorari to the Supreme Court of Alabama.  (Doc. 10, Exhibit E ) On January 20, 2000 the writ was granted and set down for submission pursuant to Rule 39.  (Doc. 10, Exhibit F)  Subsequently, on November 2, 2001 the Supreme Court of Alabama entered an order quashing the writ and denying certiorari.  (Doc. 10, Exhibit F); Ex parte Cooper, 839 So. 2d 683 (Table) (Ala. 2001) The Court of Criminal Appeals issued a certificate of final judgment on November 1, 2001.  (Doc. 10, Exhibit G)

9.  Petitioner filed a Rule 32 petition on July 19, 2002 asserting the following grounds for

error: (1)  trial court was without jurisdiction to render a judgment or impose a sentence, and (2) whether petitioner should have been charged with rape and sexual abuse where sexual abuse is a lesser included offense.  (Doc. 10, Exhibit H. pp. 3-20) [1]

10.        On September 29, 2003 the trial court conducted a hearing on petitioner's Rule 32 petition.  (Doc. 10, Exhibit H, pp. 30-38) After allowing petitioner an opportunity to articulate his claims, the trial court dismissed the petition, concluding that the claims mirrored those raised by petitioner on direct appeal and previously found to be without merit by the Alabama Court of Criminal Appeals.  (Doc. 10, Exhibit H, p. 3)

11.        Petitioner filed an appeal with the Alabama Court of Criminal Appeals, raising the following issues:  (1) trial court abused its discretion by dismissing petitioner's jurisdictional claim because it concluded the same issues had been previously raised on appeal; (2) sexual abuse indictment due to be dismissed as it fails to aver facts to duly inform petitioner of nature and cause of offense, and (3) the indictment is void for failing to allege an essential element of the offense.  (Doc. 10, Exhibit I).

12.        On May 21, 2004 the Court of Criminal Appeals entered an order affirming the trial court's ruling. (Doc. 10, Exhibit K) Petitioner subsequently filed an application for rehearing and brief in

---

[1]  In its answer to the petition respondent refers to the Rule 32 filing date as both May 2002 and July 2002.  (Doc. 9, pp. 4-5)  This discrepancy in the filing date is also evident in the record.  The petition is signed and dated May 7, 2002.  (Doc. 10, Exhibit H, p. 20)  However, in its opinion, the Court of Appeals refers to a July 18, 2002 filing date.  (Doc. 10, Exhibit M)  Likewise, the trial court docket sheet reflects a filing date of July 18, 2002.  (Doc. 10, Exhibit H, p. 3)  Since there is no issue regarding the timeliness of the habeas petition, the actual date petitioner filed the Rule 32 petition is of little significance to the court's analysis.  For the purposes of this report and recommendation, the undersigned will use the July 18, 2002 filing date reflected on the docket sheet and in the opinion from the Alabama Court of Criminal Appeals.

support.  (Doc. 10, Exhibit L )  On  June 18, 2004 on application for rehearing, the Court issued a

memorandum opinion withdrawing the May 21, 2004 opinion and overruling the application for

rehearing.  (Doc.10, Exhibit M) [2] .  The Court affirmed the trial court's dismissal of the petition,

opining, in pertinent part: [3]

> Because Cooper's convictions, although arising out of a single transaction or incident,
> were based on two separate and distinct acts, Cooper's claim that his convictions for
> both rape and sexual abuse violated double jeopardy is meritless and was properly
> denied by the circuit court.

> We note that Cooper also alleges for the first time on appeal that the trial court lacked
> jurisdiction to render a judgment on the sexual abuse charge because, he says, the
> indictment charging him with sexual abuse in the first degree was fatally defective.  The
> indictment, a copy of which is in the record before this Court, reads:

> > "The Grand Jury of said county charge that before finding this
> > indictment...Freddie Larry Cooper, whose name is otherwise unknown
> > to the Grand Jury other than as stated, he being, sixteen years of age of
> > older, did knowingly subject [T.R.], who at the time was less than
> > twelve years of age, to sexual contact, in violation of §13A-6-66 (a)(3)
> > of the Code of Alabama, against the peace and dignity of the State of
> > Alabama."
> > > ...

> Section 15-8-25, Ala. Code 1975, provides:

> "'An indictment must state the facts constituting the offense in ordinary and concise
> language, without prolixity or repetition, in such a manner as to enable a person of
> common understanding to know what is intended and with that degree of certainty

---

[2]  There are no substantive changes reflected in the June 18, 2004 opinion.  The substituted
opinion appears to contain only a technical change with Judge Pamela W. Baschab concurring in the
original opinion and recusing herself from participation in the substituted opinion.  (Doc. 10, Exhibit K)
Judge Baschab was the trial judge and sentencing judge for petitioner's criminal trial.

[3]  In addressing the double jeopardy issue, the Court quoted portions of its previous opinion
affirming the petitioner's convictions and sentences on direct appeal.

which will enable the court, on conviction, to pronounce the proper judgment.'

...

In this case, the indictment tracked the language of the §13A-6-66(a)(3) Ala. Code 1975, and that statute prescribes with definitiveness the elements of sexual abuse in the first degree. The indictment sufficiently put Cooper on notice of the charge against him. Therefore, Cooper's claim that the indictment was defective is meritless.

(Doc. 10, Exhibit M)

13.     Petitioner subsequently filed a petition for writ of certiorari to the Alabama Supreme Court  (Doc. 10, Exhibit N), which was denied on August 13, 2004, (Doc. 10, Exhibit O).  A certificate of final judgment was entered on August 13, 2004.  (Doc. 10, Exhibit P)

14.     Petitioner filed the instant habeas petition on or about September 24, 2004 alleging the following: (1) petitioner was improperly convicted of an offense rape, and its lesser included offense, sexual abuse where there was but one act or transaction in violation of Double Jeopardy Clause of the U.S. Constitution; (2) the trial court erred in admitting DNA evidence; (3) petitioner was denied his Sixth Amendment right to effective assistance of counsel for trial counsel's failure to object to insufficient chain of custody of DNA evidence; for counsel's failure to move to suppress petitioner's confession and for counsel's failure to have a DNA expert testify at trial, and (4) petitioner was denied the right to be present at the DNA admissibility hearing.  (Doc. 1)

15.     On January 18, 2005, the respondent filed an answer to the habeas petition arguing, in sum, that all claims should "be dismissed for failure to show that the appellate court's decision conflicted with established federal law as announced by the United States Supreme Court." (Doc. 9)

## II.    __DISCUSSION__ [4]

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") "amended 28 U.S.C.

§ 2254 by establishing a more deferential standard for federal court review of state court

adjudications."  Fugate v. Turpin, 8 F.Supp.2d 1383, 1385 (M.D.Ga.), aff'd, 261 F.3d 1206 (11th

Cir. 2001).  The pertinent portions of section 2254 provide as follows:

> (d)  An application for a writ of habeas corpus on behalf of person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> > (e)(1)  In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254 (West Supp. 1999).

In Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the Supreme

Court explained the application of section 2254(d).  The Court stated that "state-court judgments must

---

[4]  The court notes that petitioner was convicted and sentenced *prior* to the effective date of AEDPA.  However, petitioner's habeas petition was filed in September of 2004, well *after* the effective date of the statute and accordingly, the provisions of AEDPA are applicable to the instant petition.

be upheld unless, after the closest examination of the state-court judgment, a federal court is firmly

convinced that a federal constitutional right has been violated." Id. at 389, 120 S.Ct. at 1511.  The

Court further stated:

> [T]he most important point is that an *unreasonable* application of federal law is
> different from an *incorrect* application of federal law.... Under § 2254(d)(1)'s
> 'unreasonable application' clause, then, a federal habeas court may not issue the writ
> simply because that court concludes in its independent judgment that the relevant state-
> court decision applied clearly established federal law erroneously or incorrectly.
> Rather, that application must also be unreasonable.

Id. at 411, 120 S.Ct. at 1522 (emphasis added).  In applying the Williams standard, the United States

Court of Appeals for the Eleventh Circuit in McIntyre v. Williams, 216  F.3d 1254 (11th Cir.), cert.

denied, 511 U.S. 1021, 116 S.Ct. 2556, 135 L.Ed.2d 1074 (2000), indicated that a writ of habeas

corpus should be issued *only* if "the state court's decision was contrary to, or involved an objectively

unreasonable application of, the governing Federal law set forth by Supreme Court cases."  Id. at

1257.  Moreover, the Supreme Court has more recently stated that "[a] state determination may be set

aside under [the Williams] standard if, under clearly established federal law, the state court was

unreasonable in refusing to extend the governing legal principle to a context in which the principle should

have controlled."  Ramdass v. Angelone, 530 U.S. 156, 166, 120 S.Ct. 2113, 2120, 147 L.Ed.2d

125 (2000).

     In Bottoson v. Moore, 234 F.3d 526 (11th Cir. 2000), cert. denied, 534 U.S. 956, 122 S. Ct.

357, 151 L. Ed. 2d 270 (2001), the Eleventh Circuit elaborated on the applicable standard:

> A state-court decision is contrary to the Supreme Court's clearly established
> precedent (1) if the state court applies a rule that contradicts the governing law as set
> forth in Supreme Court case law, or (2) if the state court confronts a set of facts that
> are materially indistinguishable from those in a decision of the Supreme Court and

-8-

nevertheless arrives at a result different from Supreme Court precedent.   See  Williams v. Taylor, 529 U.S. 362, 120 S. Ct.1495, 1519-20, 146 L. Ed. 2d 389 (2000).

A state court decision involves an unreasonable application of Supreme Court precedent "if the state court identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case." Williams, 120 S. Ct. at 1520.  In addition, a state court decision involves an unreasonable application of Supreme Court precedent "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id.

234 F.3d at 531.  The Act, as amended, presumes as correct all determinations of factual issues made by a state court and places the burden upon the petitioner of rebutting such a presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e).

In Lockyer v. Andrade, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003), a case involving the application of § 2254(d), the Supreme Court held that "[a]s a threshold matter," a court applying this section must "decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" 123 S. Ct. at 1172.  "Section 2254(d)(1)'s 'clearly established' phrase 'refers to the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-court decision.'" Id. (quoting Williams v. Taylor, 529 U.S. at 412).     After discerning the "clearly established Federal law," the court must then determine, under the "contrary to" clause, whether the state court applied a rule that contradicts the governing law or whether the state court confronted a set of facts that were materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrived at a result different from Supreme Court precedent.   See Lockyer, 123 S. Ct. at 1173.  Pursuant to the "unreasonable application" clause, the court must also consider whether the state court "'identifie[d] the correct governing legal principle from [the Supreme] Court's

decisions but unreasonably applie[d] that principle to the facts of the prisoner's case.'" Id. at 1174 (quoting Williams, 529 U.S. at 413, 120 S. Ct. at 1523).  A state court decision also involves an unreasonable application of Supreme Court precedent "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply."  Williams, 529 U.S. at 407, 120 S. Ct. at 1520.  "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous."  Lockyer, 123 S. Ct. at 1174.  "The state court's application of clearly established law must be objectively unreasonable."  Id.

With this legal framework in mind, the undersigned now turns to the merits of each of petitioner's habeas claims.

Claim 1

Petitioner first alleges that he was "subjected to multiple punishment for a single act or transaction." (Doc. 1) Specifically, petitioner maintains that he was "improperly convicted of an offense rape, and its lesser included offense, sexual abuse, where there was but one act or transaction in violation of Double Jeopardy Clause of the U.S. Constitution."  (Id.)  Respondent argues that petitioner's claim is "due to be dismissed for failure to show that the appellate court's decision conflicted with established federal law as announced by the United States Supreme Court."  (Doc. 9, pp. 1-2)

The Double Jeopardy Clause protects against a second prosecution for the same offense after an acquittal; protects against a second prosecution for the same offense after a conviction and protects against multiple punishments for the same offense after a conviction. See North Carolina v. Pearce, 395

U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969).  The United States Supreme Court has held that in determining whether separate punishment might be imposed, courts must examine the offenses to ascertain "whether each provision requires proof of a fact which the other does not."  See Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).  Thus, the focus is on the statutory elements of the offense.  Id., at 304, 52 S.Ct., at 182.  If each offense requires proof of a fact that the other does not, the Blockburger test is satisfied.

The Alabama Court of Criminal Appeals addressed petitioner's double jeopardy claim on the merits and opined, in pertinent part, as follows:

> The first issue the appellant raises on appeal is whether he was subjected to multiple punishments for convictions arising from a single act or transaction.  Specifically, he contends that he was "improperly convicted of an offense, rape, and its lesser included offense, sexual abuse, where there was but one act or transaction."  (Appellant's brief at 20) Therefore, he claims that the trial court erred in allowing two separate convictions with two separate sentences for one single offense.  We disagree.

Alabama law prohibits a single crime from being divided into two or more offenses and thereby subjecting a defendant to multiple convictions for the same offense.  However, Alabama law clearly allows multiple punishments for multiple statutory offenses occurring out of the same course of events.  When determining whether two offenses constitute the same offense for double jeopardy purposes, we look to see whether each offense contains an element not contained in the other.  (Internal citations omitted)  In Ex parte Dawson, 675 So. 2d 905 (Ala. 1996), the Alabama Supreme Court held that double jeopardy did not preclude imposition of four separate consecutive life sentences for burglary, robbery, rape and sodomy convictions which arose out of a single continuing transaction in which separate offenses were committed:

> "[T]he United States Supreme Court held that multiple punishments for multiple statutory offenses do not violate the prohibition against double jeopardy where each statutory offense requires proof of an additional fact that the other statutory offenses do not require.  Blockburger, supra.  In other words, as long as each statutory offense requires proof

of additional facts, the double jeopardy prohibition is not implicated."

675 So. 2d at 907.

...

The evidence relevant to the conviction of the appellant showed the following.  On
March 6, 1994, nine year old T.R. entered her home after returning from her
grandmother's house.  At the time, T.R. was living with her widowed mother and her
mother's boyfriend, the appellant.  The appellant was the only individual home at the
time T.R. returned home.  According to the victim, the appellant carried T.R. into her
mother's room and placed her on the bed.  The appellant then proceeded to remove
T.R.'s clothes, as well as his own.  T.R. testified that the appellant touched her privates
with "his hand and his tongue" (R. 160).  The appellant also had sexual intercourse with
the child.  The appellant told T.R. he would kill her if she told anyone.

The pertinent evidence, as summarized above, tended to show that the appellant forced
the child to engage in sexual intercourse with him.  Thus, satisfying the elements of rape
in the first degree.  Further, the pertinent evidence tended to show that the appellant
touched the child's genitalia with his hand and his tongue.  This contact with the child
would support a conviction of sexual abuse in the first degree independent of the
conviction of rape in the first degree.  As the United States Supreme Court stated in
Dixon, the government is "entirely free to bring [its prosecutions] separately and can
win convictions in both" if they do not constitute the same offense.  509 U.S. at
___113, S.Ct. at 2860.

Because the offenses of rape in the first degree and sexual abuse in the first degree each
require proof of an element that the other does not, they are not the same offense under
the Blockburger test.  Therefore, we find that the appellant's convictions for rape in the
first degree and sexual abuse in the first degree which arose out of two separate acts do
not violate the principles of double jeopardy.  Consequently, the trial court's rendering
of two separate sentences for the offenses of rape in the first degree and sexual abuse in
the first degree was proper.

(Doc. 10, Exhibit D)

    As set forth herein, a habeas petitioner whose claim was adjudicated on the merits in state court

is not entitled to relief in federal court unless he meets the requirements of 28 U.S.C. § 2254(d).  The

double jeopardy claim in respondent's habeas petition arises out of the same set of facts upon which he

based his direct appeal.  The Alabama Court of Criminal Appeals' holding that no double jeopardy

violation occurred therefore constituted an adjudication of this claim on the merits.  Thus, in order to be

entitled to relief under § 2254(d), petitioner must demonstrate that the state court's adjudication of his

claim: 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States; or  "(2) resulted in

a decision that was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding."  28 U.S.C. § 2254 (d).

The Alabama Court of Criminal Appeals concluded that "[b]ecause the offenses of rape in the

first degree and sexual abuse in the first degree each require proof of an element that the other does

not, they are not the same offense under the <u>Blockburger</u> test [and] [t]herefore, ...the appellant's

convictions for rape in the first degree and sexual abuse in the first degree which arose out of two

separate acts do not violate the principles of double jeopardy."  (Doc. 10, Exhibit D)  The undersigned

finds that the state court's determination that petitioner's separate convictions and sentences for sexual

abuse and rape did not violate double jeopardy is not contrary to nor involves an unreasonable

application of clearly established federal law, as determined by the Supreme Court of the United States,

or that the determination was an unreasonable interpretation of the facts of the case in light of the

evidence presented.  Accordingly, the undersigned finds that petitioner's Claim 1 is without merit and is

due to be denied.

Claim 2

Petitioner next argues that the "trial court erred in admitting DNA evidence."  (Doc. 1)

Specifically, petitioner maintains that the "the techniques used by the labatory [sic] were not generally

-13-

acceptable in the Scientific Community and the Labatory [sic] erred in the performance of interpretation

of the DNA testing."  (Id.)  Respondent maintains that petitioner's "assertion that the trial court

improperly admitted DNA evidence is an evidentiary error" and therefore "[petitioner] is not due

federal habeas relief."  (Doc. 9, p. 7)

       The Alabama Court of Criminal Appeals concluded that the trial court did not err in admitting

the DNA evidence, opining, in pertinent part:

> The appellant contends that the trial court erred by admitting testimony concerning the
> result of DNA testing in evidence because, he says, the state failed to establish that the
> DNA laboratory in Mobile, where the testing was done, used generally accepted testing
> techniques and had performed its tests without error, as required by the third prong of
> the test stated in Ex parte Perry, 586 So. 2d 242 (Ala. 1991), which asks:
>
> > "III.  In this particular case, did the testing laboratory perform generally
> > accepted scientific techniques without error in the performance or
> > interpretation of the tests?"

Ex parte Perry, 586 So. 2d at 250.

> The Perry test, however, is no longer the standard by which the courts of Alabama
> determine the admissibility of DNA evidence.  In State v. Turner, [Ms. 1952024,
> January 16, 1998] ___So. 2d ____ (Ala. 1998), the Alabama Supreme Court held:
>
> > "that is the admissibility of DNA evidence is contested, the trial court
> > must hold a hearing, outside the presence of the jury and, pursuant to §
> > 36-18-30, determine whether the proponent of the evidence sufficiently
> > establishes affirmative answers to these two questions:
> >
> > "I.    Are the theory and the technique, (ie., the principle and the
> > methodology), on which the proffered DNA forensic evidence is based
> > 'reliable'?
> >
> > II.    Are the theory and the technique, (i.e., the principle and the
> > methodology), on which the proffered DNA evidence is based
> > 'relevant' to understanding the evidence or to determining a fact is
> > issue?

-14-

...

The record reflects that at the pretrial hearing to determine the admissibility of the
restriction fragment length polymorphism ("RFLP") matching DNA evidence, the state
presented testimony from Faron Brewer, a forensic serologist for the Mobile laboratory
of the Alabama Department of Forensic Sciences.  He testified that the theory and
technique of the RLFP method used by the Alabama Department of Forensic Sciences
Mobile DNA laboratory was generally accepted and considered reliable by the Federal
Bureau of Investigation and its scientific community.  The DNA matching evidence was
relevant to determine a fact in issue, whether or not the appellant was the one who
raped and sexually abused the victim and to corroborate the testimony of the victim.
Therefore, the trial court properly admitted the evidence.

We note that much of the appellant's argument focuses on the chain of custody of the
victim's panties and the blood samples.  At trial, however, the appellant made no
objection regarding the chain of custody.  Therefore, he has not preserved this issue for
review.  (citation omitted)

Even assuming, however, that the appellant preserved his assertion for review, reversal
would not be required....The chain of custody of the evidence did not render the
evidence inadmissible, but merely established a jury determination.  Accordingly, we
find no error as to this claim.

III.

The appellant also contends that the trial court erred in admitting in evidence DNA
population frequency statistical evidence.

Applying the standard set forth in Part II of this memorandum opinion, we find that the
trial court properly admitted the evidence.  The record reflects that Faron Brewer
testified that the method used to determine the probability statistics in this case was a
fixed bin method.  He further testified that a fixed bin method was the method utilized
by the laboratories of the F.B.I. and it is the most widely used method among
laboratories in the United States.  According to Brewer, the method is conservative,
has undergone peer review, and has been published.  Because the trial court had before
it evidence establishing the reliability and the relevance of the population frequency
statistic evidence, it did not err in allowing that evidence to be submitted to the jury for
its consideration.

Moreover, we agree with the trial court hat the evidence presented by the appellant's
witness at the hearing concerning the statistical determination from the data goes to the

weight of the evidence, not its admissibility.  As the trial court stated, "And when you
have two different experts using two different statistical methods, both of which are said
to be acceptable in the scientific community arriving at two different conclusions, that's
what the jury has to decide and not the judge."  (R. 119-120).  We find no error in the
admission of the evidence.

(Doc. 10, Exhibit D)

The undersigned agrees with respondent that petitioner's Claim 2 alleges an error based on a

state court evidentiary ruling.  Generally, federal habeas relief is only available where there has been a

violation of petitioner's federal constitutional rights.  Federal habeas relief shall be granted on a state

evidentiary ruling only if the ruling was in error, and effectively denied petitioner a fundamentally fair

trial.  See Dickson v. Wainwright, 683 F.2d 348, 350 (11th Cir. 1982) ("An evidentiary error does not

justify habeas relief unless the violation results in a denial of fundamental fairness.").  However, an

incorrect evidentiary ruling does not violate the established standard of fundamental fairness unless the

error is "material in the sense of a crucial, critical, highly significant factor." Hills v. Henderson, 529 F.2d

397, 401 (5th Cir.), cert. denied, 429 U.S. 850, 97 S.Ct. 139, 50 L.Ed.2d 124 (1976) (quoting

Corpus v. Beto, 469 F.2d 953 (5th Cir.1972) cert. denied, 414 U.S. 932, 94 S.Ct. 236, 38 L.Ed.2d

162 (1973)).

The record before the court reflects that the trial court conducted a hearing on the admissibility

of the DNA evidence prior to trial and concluded that the evidence was admissible.  (Doc. 11, Exhibit

A-3, R.1-31)  The record further reflects that counsel for petitioner was present at the hearing and

afforded the opportunity to cross examine the state's expert witness, who testified in detail regarding

the reliability and the relevance of the population frequency statistic evidence.  (Id.)  There is simply no

evidence before the court that the trial court's admission of the DNA evidence was in error and

resulted in a denial of fundamental fairness to petitioner.  Accordingly, the undersigned finds that petitioner's Claim 2 is due to be denied.

Claim 3

Petitioner further alleges that he "was denied his Sixth Amendment right to Effective Assistance of Counsel."  (Doc. 1) Specifically, petitioner contends that his "trial counsel failed to object to the insufficient chain of custody of DNA evidence; failed to move to suppress Petitioner's confession and failed to have DNA biological expert testify at trial."  (Id.)  Respondent argues that petitioner's claim is "due to be dismissed for failure to show that the appellate court's decision conflicted with established federal law as announced by the United States Supreme Court."  (Doc. 9, pp. 1-2)

Claims of ineffective assistance of counsel are grounded in the protections afforded by the Sixth Amendment to the United States Constitution, which provides in relevant part that, "[i]n all criminal prosecutions, the accused shall...have the Assistance of Counsel for his defense." U.S. Const. Amend. VI.   In Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) the Supreme Court set forth the elements to be proven to prevail on an ineffective assistance of counsel claim as follows:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687, 104 S. Ct. at 2064.  The petitioner must demonstrate that his counsel's performance "fell below an objective standard of reasonableness," id. at 688, 104 S. Ct. at 2064, and that "there is

-17-

a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S. Ct. at 2068. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Id. at 688, 104 S. Ct. at 2065.

An ineffective assistance of counsel claim is examined under the "totality of the circumstances." House v. Balkcom, 725 F.2d 608, 615 (11th Cir.1984), cert.denied, 469 U.S. 870, 105 S.Ct. 218, 83 L.Ed 2d 148 (1984)). An attorney's performance is presumed to have been reasonable and must not be examined with the aid of judicial hindsight. Messer v. Kemp, 760 F.2d 1080, 1088 (11th Cir. 1985). Moreover, a federal court must apply a "heavy measure of deference to counsel's judgments." Singleton v. Thigpen, 847 F.2d 668, 670 (11th Cir. 1988) (quoting Strickland, 446 U.S. at 691).

> The test has nothing to do with what the best lawyers would have done.
> Nor is the test even what most good lawyers would have done. We
> ask only whether some reasonable lawyer at the trial could have acted,
> in the circumstances, as defense counsel acted at trial. . . . We are not
> interested in grading lawyers' performances; we are interested in
> whether the adversarial process at trial, in fact, worked adequately.

Grayson v. Thompson, 257 F.3d 1194, 1216 (11th Cir. 2001) (quoting White v. Singletary, 972 F.2d 1218, 1220-21 (11th Cir. 1992)); Bolender v. Singletary, 16 F.3d 1547, 1573 (11th Cir. 1994), cert. denied, 513 U.S. 1022, 115 S.Ct. 589, 130 L.Ed. 2d 502 (1994) (the failure of counsel to raise a meritless claim does not constitute ineffective assistance of counsel)

The Alabama Court of Criminal Appeals addressed petitioner's claim on the merits and concluded, in pertinent part:

> The next issue the appellant raises on appeal is whether he was deprived of his right to
> the effective assistance of counsel. The appellant's specific allegations include:
>
> A)   His trial counsel failed to object to the problems in the chains of

custody on any grounds, nor did he move the trial court for a limiting
instruction, pursuant to §12-21-13 Ala. Code 1975;

B)   His trial counsel failed to move to suppress his confession; and

C)   His trial counsel failed to have the appellant's DNA biological
expert testify at the pre-trial admissibility hearing and failed to have his
biological and statistical expert testify at trial.

This court will address each of these issues separately pursuant to the circumstances of
the case and the applicable case law set forth below.

To prevail on an ineffective assistance of counsel claim, a defendant must meet the two-
pronged test set out by Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80
L. Ed. 2d 674 (1984).

...

A.   Failure of trial counsel to object to the chain of custody of
evidence admitted at trial

The appellant alleges that "trial counsel's failure to object to the
insufficient chains of custody and his failure to request a limiting
instruction concerning the alleged breaks in the chains of custody
constitute professional error within the meaning of Strickland.  We
disagree.
"Generally, a 'request for jury instructions is a matter of trial strategy
and, absent a clear showing of improper or inadequate representation,
is to be left to the judgment of counsel.' (Internal citations omitted)
Therefore, we find that a request for a limiting instruction was within the
trial counsel's discretion and does not indicate improper or inadequate
representation.

Additionally, we note that in Smith v. State, 446 So. 2d 68, 73 (Ala.
Crim. App. 1984), this court held that "as a general rule, the
establishment of a chain of custody is needed to show a reasonable
possibility that the evidence has not been tampered with."  (Internal
citations omitted) Further,

"to warrant the reception of an object in evidence
against an objection that an unbroken chain of custody
had not been show, it is not necessary that it be proven

-19-

> to an absolute certainty, but only to a reasonable
> probability that the object is the same as, and not
> substantially different from, the object as it existed at
> the commencement of the chain."

Williams, supra, quoting Sexton v. State, 346 So. 2d 1177 (Ala. Crim. App.), cert. denied, 346 So. 2d 1180 (Ala. 1977)

In reviewing the record, it appears the admittance of the evidence in question here, the blood samples, was warranted pursuant to the applicable standard above.  The record does not reveal any specific allegation by the appellant which would suggest that the evidence here was tampered with or altered in any way, or which would render a timely objection by trial counsel appropriate.  The "burden of proof is on the defendant to show trial counsel rendered ineffective assistance."  Brown v. State, 663 So. 2d 1028, 1032 (Ala. Cr. App. 1995)

...

Once the state obtains evidence, then it "need only prove to a reasonable probability that the object is in the same condition as, and not substantially different from, its condition at the commencement of the chain.'" (internal citations omitted) No evidence was submitted to suggest evidence was tampered with.  Essentially, the appellant based his contention upon unverified assertions that there was a "missing link" in the chain of custody.  This court finds nothing in the record to support this contention.  Had trial counsel objected at trial, possibly the chain of custody would have become more overt; however, there is no evidence to suggest that this would have benefitted the appellant to the point of altering the result of the proceeding and ultimately, the jury's verdict.  Consequently, the appellant has failed to prove "with reasonable probability" that but for "counsel's unprofessional error, the result of the proceeding would have been any different."  Strickland, supra.  The trial court did not abuse its discretion in denying appellant's motion for a new trial based on this claim.

B.  Failure to move to suppress appellant's confession.

The appellant also contends that trial counsel's failure to move to suppress his confession rendered him ineffective assistance of counsel.  However, upon review of the record on appeal, we find no basis for the suppression of the confession of the appellant.

...

The record reveals that the evidence presented was sufficient to prove that the statement made by the appellant was voluntary. Testimony was presented which suggested that the statement was free from "inducement, threat, or promise, either express or implied, which would have produced in the mind of the accused any fear of harm or hope in favor." Additionally, the appellant testified that he was not afraid of the officer taking the statement and that he did not feel threatened when he signed the waiver of his <u>Miranda</u> rights. (R. 72-77.)

We cannot say that trial counsel's failure to make a motion to suppress constituted ineffective assistance of counsel, because such a motion was not warranted under the facts of this particular case. Counsel is not ineffective for failing to file a motion for which there is no legal basis. <u>See</u> <u>Patrick v. State</u>, 680 So. 2d 959 (Ala. Crim. App. 1996). Therefore, it is impossible for appellant to satisfy the tests set forth in <u>Strickland</u>; specifically, the appellant is unable to prove that there exists a "reasonable probability" that the outcome would have been different, when such a motion to suppress would have been denied.

C. <u>Failure to depose and call witnesses at trial.</u>

The appellant also argues that his trial counsel's failure to have his DNA biological expert testify at the pre-trial hearing and failure to have his biological and statistical expert testify at trial prevented him from adequately challenging the state's DNA evidence. The appellant further claims that trial counsel was aware that the expert was unavailable and could have deposed his biological expert prior to the hearing. He argues that because testimony from the expert "could have supported his contentions that there were probes that excluded [the appellant]," the failure to present the evidence rendered him ineffective assistance. (Appellant's brief at 48)

"Complaints concerning uncalled witnesses impose a heavy showing since the presentation of testimonial evidence is a matter of trial strategy and often allegations of what a witness would have testified to are largely speculative." <u>Williams v. State</u>, 480 So. 2d 1265, 1268 (Ala. Cr. App. 1985), quoting <u>Buckelew v. United States</u>, 575 F.2d 515, 521 (5th Circuit 1978). Based on the record before us, we find the appellant's allegations with regard to this claim are speculative and fail to substantiate this basis for his claim. No evidence was presented; no witnesses were presented; and no affidavits of witnesses were submitted to the trial court for review at the hearing on the motion for a new trial to support the appellant's claim that he was prejudiced by trial counsel's failure to call these witnesses. The appellant presented nothing which would provide any basis for his assertions that either experts' testimony would have been beneficial to his case. Essentially, the appellant based his claims upon unverified assertions. "Courts have viewed claims of ineffective assistance of counsel with great

-21-

caution when the only evidence of missing witness testimony is from the defendant." <u>Williams</u>, 480 So. 2d at 1268.  In view of the applicable caselaw and circumstances of this case, we find that the appellant has failed to meet the burden of proof as set out in <u>Strickland</u>, supra; specifically, this appellant has failed to prove "with reasonable probability" that but for "counsel's unprofessional error, the result of the proceeding would have been different."  Therefore, the trial court did not abuse its discretion in denying the appellant's motion for new trial based on the appellant's contention of ineffective assistance of counsel.

(Doc. 10, Exhibit D)

As previously noted herein, in accordance with AEDPA, this court may not grant petitioner's request for habeas relief with respect to this claim unless it finds that the decision of the Alabama Court of Criminal Appeals in this regard "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States...or...resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  Having carefully considered each of the ineffective assistance of trial counsel claims made by petitioner, the Court finds that petitioner has failed to establish entitlement to relief under § 2254(d).  The record reflects that these each of these claims were addressed on the merits by the Alabama Court of Criminal Appeals, which properly recognized the applicability of <u>Strickland</u> and which reasonably applied the principles outlined in <u>Strickland</u> to the facts of the case to find that petitioner's trial counsel had provided petitioner effective assistance.

The undersigned finds that the state court's determination that petitioner's trial counsel provided effective assistance of counsel is not contrary to nor does it involve an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States, or that the

determination was an unreasonable interpretation of the facts of the case in light of the evidence presented.  Accordingly, the undersigned finds that petitioner's Claim 3 is due to be denied.

Claim 4

Finally, petitioner contends that he "was denied the right to be present at a critical stage of the trial... [the DNA admissibility hearing] and his trial counsel attempted to waive his presence."  (Doc. 1) Respondent argues that petitioner's claim is "due to be dismissed for failure to show that the appellate court's decision conflicted with established federal law as announced by the United States Supreme Court."  (Doc. 9, pp. 1-2)

The Sixth Amendment's Confrontation Clause provides: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." See  Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).  Thus, "a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure. " Kentucky v. Stincer,  482 U.S. 730, 107 S.Ct. 2658 (1987).  Petitioner maintains that he was denied the right to be present when the trial court conducted a hearing to determine whether DNA evidence would be admissible at petitioner's trial.  (Doc. 1)

The Alabama Court of Criminal Appeals addressed this claim on the merits and opined, in pertinent part, as follows:

> The appellant also claims he was denied his state and federal constitutional rights to be present at all critical stages of his trial.
>
> "A defendant's right to be present at all stages of a criminal trial derives from the confrontation claims of the Sixth Amendment and the due process clause of the Fourteenth Amendment. Illinois v. Allen, 397 U.S. 337, 338, 90 S.Ct. 1057, 1058, 25 L.Ed. 2d 353 (1970); Hopt v. Utah, 110 U.S. 574, 579, 4 S.Ct. 202, 204, 28 L. Ed.

2d 262 (1884).  This right extends to all hearings that are an essential part of the trial- - ie., to all proceedings at which the defendant's presence "has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge."  Snyder v. Massachusetts, 291 U.S. 97, 105-106, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934).'" Further, "the confrontation clause of the 6th Amendment guarantees a defendant the right to be present at any stage of trial when his presence would contribute to his opportunity for effective cross-examination."  Dobyne v. State, 672 So. 2d 1319, 1329 (Ala. Cr. App. 1994), quoting Kentucky v. Stincer, 482 U.S. 730, 107 S.Ct. 2658, 96 L. Ed. 2nd 631 (1987).

In reviewing the record, we find that the appellant's trial counsel waived the appellant's presence at the pre-trial hearing held on January 5, 1006.  The appellant's counsel stated at the beginning of the pre-trial hearing to determine the admissibility of the state's DNA evidence,

> "Your Honor, I had spoken with the defendant advising him to be present this morning.  I'm not able to - - he's not here and I'm not able to reach him at the phone numbers I have for him.  Therefore, for the record, I'm going to waive the presence of Mr. Cooper for these proceedings. (R 4.(1/5/96)
>
>                               ...

It is undisputed that the appellant had notice of the hearing.  Additionally, the appellant was asked, at the hearing on his motion for a new trial, if he recalled being asked before trial whether he waived his appearance at the pre-trial hearing; "that it was okay that you were not there for that hearing."  The appellant responded "yes."  (R. 35. (4.27.97)).

> "A party cannot assume inconsistent positions at trial and on appeal, and a party cannot allege as error proceedings in the trial court that were invited by him or were a natural consequence of his own action. Leverett v. State, 462 So. 2d 972 (Ala. Cr. App. 1984), cert. denied, 462 So. 2d 972 (Ala. 1985).  A defendant cannot invite error by his conduct and later profit by the error. Timmons v. State, 487 So. 2d 975 (Ala. 1986)."

Pressley v. State, [Ms. Cr-97-0102, January 15, 1999] ___So. 2d___, ___ (Ala. Cr. App. 1999)

> Moreover, the appellant has failed to offer any evidence which would suggest that his presence "would contribute to the fairness of the procedure [the determination of the admissibility of the DNA evidence]."  Kentucky, 107 S.Ct. at 2667.

Based on the foregoing law and circumstances, we find that the appellant voluntarily waived his presence at the pre-trial DNA admissibility hearing.  Further, we do not find that, had the appellant been present at the hearing, his presence would have contributed to the fairness of the procedure.  The state's witness was effectively cross-examined by the appellant's attorney at the hearing and again at trial.  We do not find that the appellant was prejudiced in any way be his voluntary absence a the hearing.  Essentially, we find that the alleged error by the trial court in which the appellant now raises on appeal is a "natural consequence of his own action."  Therefore, the action of the trial court was proper in denying the appellant's motion for new trial based on the contention that the appellant was denied his constitutional rights to be present at all critical stages of his trial.

(Doc. 10, Exhibit D)

Petitioner's claim, in sum, is that the trial court erred in allowing his counsel to waive his presence at the pretrial evidentiary hearing.  Federal habeas relief is appropriate to correct trial errors *only* where the defendant has been deprived of a fundamentally fair trial as a result.  Donnelly v. DeChristoforo, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed. 2d 431 (1974).  As the Supreme Court has pointed out, "it is not the province of a federal habeas court to reexamine state-court determinations of state law questions."  Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed. 2d 385 (1991).  Moreover, "[a]n evidentiary error does not justify habeas relief unless the violation results in a denial of fundamental fairness."  See Dickson v. Wainwright, 683 F.2d at 350.

The transcript of the DNA hearing reflects that counsel for petitioner advised the court that petitioner had been notified of the hearing and of his need to be present.  When petitioner failed to appear, counsel waived petitioner's presence and the hearing proceeded.  (Doc. 11, Exhibit A-3, R.1-31)  Petitioner's counsel was afforded the opportunity to cross-examine the State's expert during the hearing.  (Id.)  The record before the court simply does not support petitioner's contention that he was denied the right to be present at the hearing.  Moreover, there is no evidence that petitioner's absence

at the hearing resulted in a denial of fundamental fairness to petitioner.  Accordingly, the undersigned finds that petitioner's Claim 4 is due to be denied.

**III.**   **CONCLUSION**

It is the opinion of the undersigned Magistrate Judge that the petitioner's rights were not violated in this cause on the issues raised in his petition for habeas corpus relief, and it is therefore recommended that the petition be denied.

The attached sheet contains important information regarding objections to this Recommendation.

**DONE** this 25th day of April, 2005.

/s/ Kristi D. Lee
**KRISTI D. LEE**
**UNITED STATES MAGISTRATE JUDGE**

-26-

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

1.    **Objection**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  See 28 U.S.C. § 636(b)(1)(C); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

> A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.    **Opposing party's response to the objection.**  Any opposing party may submit a brief opposing the objection within ten (10) days of being served with a copy of the statement of objection. Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

3.    **Transcript (applicable where proceedings tape recorded)**.  Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

**KRISTI  D.  LEE**
**UNITED STATES MAGISTRATE JUDGE**

-27-